```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT BLUEFIELD
```

**TIMOTHY W. LARUE,**

    **Plaintiff,**

v.                                      CIVIL ACTION NO. 1:07-00805

**UNUM LIFE INSURANCE**
**COMPANY OF AMERICA, et al.,**

    **Defendants.**

## MEMORANDUM OPINION

Pending before the court are the cross motions for summary judgment filed by both parties. (Doc. Nos. 17, 19.) Having reviewed the record and applicable law, for the reasons outlined below, the court grants the defendants' motion for summary judgment (Doc. No. 17), and denies the plaintiff's motion for summary judgment (Doc. No. 19).

**I.   Background**

**A.   The Plan**

The plaintiff, Timothy Larue, was employed by St. Luke's Princeton d/b/a St. Luke's Hospital ("Hospital") as a maintenance mechanic from May 17, 1998, to January 6, 2005. (Doc. No. 15 at 1; U.A.C.L. at 415, 429.) His occupation is classified as heavy work. (Doc. No. 18 at 3; Doc. No. 20 at 2.) In addition to his salary, the Hospital provided Mr. Larue with long-term disability

insurance which it purchased from UNUM Life Insurance Company of America ("Unum").  (Doc. No. 15 at 1.)

This long-term disability policy, Policy No. 580369 001, ("Policy"), insures an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*.  (Id.)  The policy is administered by UNUM and provides monthly disability benefits equal to sixty percent of a participant's monthly earnings.  (U.A.C.L. at 398, 406.)  The benefits are divided into two tiers: "own occupation benefits" and "any occupation benefits."  (Id. at 394.)

To be eligible to receive the first tier of benefits, "own occupation benefits," a participant must be continuously disabled for the "elimination period," which is 150 days.  (Id.)  A participant is disabled when Unum determines that "[he or she] is limited from performing the material and substantial duties of [his or her] regular occupation due to [his or her] sickness or injury . . . ."  (Id.)  Payments made under this tier of benefits are limited to a twenty-four-month period.  (Id.)

After the twenty-four-month period has elapsed, and "own occupation benefits" have therefore been exhausted, the participant may be eligible to receive second tier, "any occupation benefits," which are payable for as long as the disability continues or until the participant reaches Social

Security Age.  (Id. at 388-389.)  To receive "any occupation benefits" Unum must determine that due to the same sickness or injury the participant is unable to perform the duties of any gainful occupation for which he or she is fitted by education, training, or experience.  (Id. at 394.)  Again, the discretionary authority to determine a participant's eligibility for benefits is reserved by the Plan to Unum.  (Id. at 398.)

**B.   Medical History**

The record indicates that Mr. Larue first began seeking treatment for back and neck pain in 2002.  In February of 2002 an MRI of Mr. Larue's cervical spine, conducted at Princeton Community Hospital, showed "very minimal bulging of annulus fibrosis at C4-5 and C6-7 without any significant indentation of the thecal sac."  (Id. at 272.)  Mr. Larue then sought treatment for low back and neck pain from Rickey L. Bradley, D.O., in April of 2002.  (Id. at 426.)  On May 28, 2002, an MRI of Mr. Larue's lumbar spine, conducted at Princeton Community Hospital, showed minimal to mild disc bulging from L3-5 and hypertrophic changes of the facet joints from L2-5.  (Id. at 275.)

In a letter of referral, dated July 29, 2002, to Dr. Edgar Weaver, Jr., Dr. Bradley related Mr. Larue's complaints of persistent low pack pain and occasional numbness in the left lower extremity.  (Id. at 246.)  Dr. Weaver treated Mr. Larue on August 8, 2002, and concluded that Mr. Larue had "discogenic pain

3

aggravated by poor muscular support." (Id. at 242.) Dr. Weaver recommended physical therapy. (Id.)

Upon referral from Dr. Bradley, Dr. Carl Shelton saw Mr. Larue on July 21, 2004. Dr. Shelton opined that Mr. Larue's back pain resulted from stresses at work and recommended a consistent home exercise program and a continuation of his prescription for Neurontin and Tylenol 4. (Id. at 247.)

The record of treatment then slowed until after January 5, 2005, Mr. Larue's last day working for the Hospital. On January 13, 2005, Dr. Bradley recommended that Mr. Larue take two weeks off work. (Id. at 239.) On January 27, 2005, Dr. Bradley recommended Mr. Larue take an additional two weeks off work and scheduled an MRI of the lumbar spine for January 29, 2005, and an MRI of the cervical spine for February 3, 2005. (Id. at 240, 277-279.) The MRI of the lumbar spine showed minimal bulging of L3-4, "greater to the right of the midline than to the left producing mild encroachment upon the thecal sac," while the MRI of the cervical spine showed that minimal bulging and spurs from the endplates were asymmetrically compressing the thecal sac minimally more toward the right side. (Id. at 277-279.) Dr. Bradley's recommendation for Mr. Larue to abstain from work persisted through subsequent examinations. (Id. at 241, 253, 254, 260, 262.)

On March 5, 2005, Dr. Bradley referred Mr. Larue to Dr. Jeffrey Greenberg, a board certified neurosurgeon.  (Id. at 176-179.)  Upon examining Mr. Larue, Dr. Greenberg recommended conservative treatment measures with the possibility of facet injections, and activity as tolerated.  (Id.)  On March 11, 2005, Dr. Greenberg saw Mr. Larue again and recognized a facet hypertrophy at L2-4.  (Id. at 251.)  Dr. Greenberg then performed facet (depromedol) injections at L3-4.  (Id. at 185.)  On April 1, 2005, the injections appeared to provide Mr. Larue with mild relief, however, by May 16, 2005, Dr. Greenberg noted that Mr. Larue's back pain had resumed.  (Id. at 255.)  On June 1, 2005, Dr. Greenberg also noted that a trial of anti-inflammatories had been ineffective.  (Id. at 263.)

During this same period of time Dr. Bradley also referred Mr. Larue to Dr. Robert Kropac for orthopedic consultation and evaluation.  On April 6, 2005, following an exam and review of the diagnostic testing, Dr. Kropac delivered a diagnosis of lumbosacral musculigamentous strain, noting a range of motion limitation with true lumbar flexion of 40 degrees, true lumbar extension of 15 degrees, and right and left lateral bending of 25 degrees.  (Id. at 256.)

**C.   The Claim**

On June 8, 2005, Mr. Larue's application for benefits was received by Unum.  (Id. at 414.)  The attending physician's

5

statement that accompanied Mr. Larue's application for benefits was prepared by Dr. Bradley, who opined that Mr. Larue suffered from "low back pain with bulging disk" and that Mr. Larue could not bend, stoop, stand, sit for long periods of time, or stretch overhead.  (Id. at 416.)

Unum referred Mr. Larue's medical records to an in-house registered nurse for evaluation.  Elaine Fermanis, R.N., concluded that the medical evidence presented did not indicate that Mr. Larue's complaints rose to a level of impairment and that she would "expect [him] to be able to return to former functional capacity."  (Id. at 168.)  The file was next referred to Alan J. Couturier, M.D., an occupational medical specialist who also served as a vice president of Unum.  (Id. at 152.)  Dr. Couturier consulted the "medical disability advisor" which recommends abstention from heavy work for up to 42 days for a diagnosis of a lumbrosacral strain, and concluded that Mr. Larue should have returned to work full-time by the beginning of March.  (Id. at 151.)  Dr. Couturier also faxed Dr. Bradley seeking an explanation of his restrictions and limitations to which Dr. Bradley did not respond.  (Id. at 140-143.)

On October 11, 2005, Richard Tyler, M.D., an orthopedic surgeon who also served as a vice president of Unum, reviewed Mr. Larue's file and opined that "symptoms of pain would support 1-3 weeks of sedentary capacity.  Thereafter no support for any

restrictions or limitations." (Id. at 103-104.)  The next day, Unum denied Mr. Larue's claim for benefits by letter. (Id. at 83-91.)  The letter concluded, "[W]e find no support for impairment beyond six weeks from January 6, 2005, your date of disability . . . The clinical records contained in your file do not support an impairment that would extend beyond June 5, 2005, the date the elimination period would be satisfied." (Id. at 89.)

    Mr. Larue appealed Unum's adverse benefit determination on December 16, 2005.  (Id. at 56.)  No additional medical documentation was submitted in connection with the appeal.  (Doc. No. 15 at 2.)  Unum again reviewed the claim and obtained evaluations from in-house medical professionals that had not been involved in the earlier record review. (Id.)  Particularly the file was reviewed by Richard J. Cole, R.N., and Gary P. Greenhood, M.D.  While Nurse Cole concluded that restrictions and limitations on repetitive activity, prolonged standing or sitting, twisting and heavy lifting would be reasonable, he also found that there was no change in Mr. Larue's condition between 2002 and 2005, a period during which Mr. Larue was working and therefore not disabled.  (U.A.C.L. at 36.)  Dr. Greenwood determined that the information submitted supported a diagnosis of lumbosacral musculoligamentous strain, the symptoms from which typically resolve in "a matter of weeks to a month or two." (Id.

7

at 22.) Based on his review, Dr. Greenwood concluded that Mr. Larue should have been able to return to heavy work with no restrictions on April 2, 2005. (Id.)

By letter dated March 1, 2006, Unum upheld its initial denial of Mr. Larue's claim. (Id. at 10-12.) The letter reiterated that "there have been no reports of electro-diagnostic studies," and that there have been "no abnormalities on neurological examinations." (Id. at 10-11.) The letter ruled out fibromyalgia on the basis that the records did not report tender points and because there was no indication that Mr. Larue was evaluated by a rheumatologist. (Id.) Moreover, the letter confirmed Unum's original finding that Mr. Larue's complaints were consistent with a soft tissue injury (lumbosacral musculoligamentous strain), and thus, that Mr. Larue should have returned to heavy work by April 2, 2005. (Id.)

**D. Procedure**

Mr. Larue filed suit in the Circuit Court of Mercer County, West Virginia, on October 12, 2007. (Doc. No. 1.) Unum/Hospital quickly removed the action to this federal court and the parties stipulated to the dismissal of Counts I, II, and III of the complaint. (Doc. Nos. 1, 8, 9.) Both Unum/Hospital and Mr. Larue moved for summary judgment on May 30, 2008, and both parties responded in opposition to the other's motion on July 2,

2008. (Doc. Nos. 17, 19, 22, 23.) Accordingly, the cross motions for summary judgment are ripe for review.

**II. Standard of Review**

A motion for summary judgment may be granted when there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his case and does not make, after adequate time for discovery, a showing sufficient to establish that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In reviewing an ERISA claim for the denial of benefits, the court must apply a de novo standard unless, as is the case here, the benefit plan provides the plan administrator or fiduciary with the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the Plan provides the plan administrator with discretionary authority, the

9

court applies an "abuse of discretion" standard, and will not disturb the denial of benefits if the decision is objectively reasonable and based upon substantial evidence. Firestone, 489 U.S. at 111; Ellis v. Metro Life Ins. Co., 126 F.3d 228, 232-35 (4th Cir. 1997) (explaining that the quantum of evidence necessary to qualify as "substantial" is not great; it must be more than a scintilla, but can be less than a preponderance); see also Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997) (explaining that a decision is reasonable if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.").

    Nonetheless, as in the instant case, where a benefit plan acts as both fiduciary of the plan's beneficiaries and the plan's insurer, the Fourth Circuit has held that a court must use a "sliding scale abuse of discretion standard," reducing the deference given to the fiduciary to the degree necessary to neutralize any influence resulting from the conflict. See Ellis, 126 F.3d at 233; Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996); Hickey v. Digital Equip. Corp., 43 F.3d 941, 946-47 (4th Cir. 1995). "The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and

the more substantial the evidence must be to support it." Ellis, 126 F.3d. at 233.[1]

## III. Analysis

Mr. Larue argues that Unum's decision to deny him benefits was not supported by substantial evidence because Unum focused on Dr. Kropac's diagnosis of musculoligamentous strain as opposed to the other evidence in the record which evidenced a degenerative facet joint hypertrophy. (Doc. No. 20 at 13-17.) Moreover, Mr. Larue also argues that Unum's decision was not the "result of a full and fair examination of the evidence and issues presented" because the "potential impact of [his] psychological condition during the time in question is incomplete." (Id. at 17.)

The court rejects Mr. Larue's argument that Unum's decision to deny him benefits was not supported by substantial evidence. Unum's disregard for Dr. Bradley's restriction and limitations diagnosis was not an abuse of discretion. Indeed, Dr. Bradley was the only one of Mr. Larue's physicians that provided a specific opinion as to Mr. Larue's restrictions and limitations, the focal point of the instant disability analysis. Neither Dr. Kropac nor Dr. Greenberg made such findings. Moreover, after determining that Dr. Bradley's restrictions and limitations

---

[1] The parties do not dispute the standard of review the court must apply to Unum's decision to deny benefits. (Doc. No. 20 at 12-13; Doc. No. 18 at 11-12.)

diagnosis did not comport with the MRI evidence, Dr. Couturier attempted to contact Dr. Bradley for explanation. (U.A.C.L. at 140-144.) Dr. Bradley did not respond. (Id.) Moreover, in addition to Dr. Couturier, Dr. Greenhood and Dr. Tyler both opined that based on the diagnostic evidence Dr. Bradley's restrictions and limitations diagnosis was overly restrictive. (Id. at 22, 103-104.)

Similarly, Unum's focus on Dr. Kropac's diagnosis of musculoligamentous strain, was not an abuse of discretion. The MRI studies done in 2002 were almost identical to the MRI studies done in 2005. (Id. at 272-279.) Thus, Unum's focus on musculoligamentous strain as opposed to degenerative facet joint hypertrophy, was not improper where the diagnostic evidence did not show the facet joint hypertrophy or disc bulging to be worsening. Moreover, Dr. Greenhood discredited Dr. Bradley's diagnosis of fibromyalgia by recognizing that the record did not show Mr. Larue's pain to be centered around tender points. (Id. at 22.)

The court also rejects Mr. Larue's argument that Unum's decision was not the "result of a full and fair examination of the evidence and issues presented." The argument is a day late and a buck short. Even at this juncture of the case, Mr. Larue has never claimed that he is or was psychologically impaired. Indeed, the issue of psychological impairment has never been

12

presented.  Mr. Larue's argument that Unum's examination was lacking because Unum failed to solicit a restriction and limitation diagnosis from Dr. Ruiz is meritless.  There is no evidence in the record which shows Mr. Larue's depression to have necessitated restrictions or limitations.  (Id. at 165, 103, 36, 11.)  Moreover, it is not Unum's responsibility to prove Mr. Larue's case for him.  See Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 298 (9th Cir. 1999); see also Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 236 (4th Cir. 1997).

Accordingly, the court finds that Unum's denial of benefits was reasoned, principled, and based on substantial evidence.[2]

**IV. Conclusion**

For the aforementioned reasons, the court hereby **GRANTS** defendants' motion for summary judgment (Doc. No. 17), **DENIES** plaintiff's motion for summary judgment (Doc. No. 19), and **DIRECTS** the Clerk to dismiss this matter from the active docket of the court.  A separate Judgment Order will be entered contemporaneously with this Memorandum Opinion implementing the court's decision.

---

[2] The parties stipulated that the Hospital was not involved in the adjudication of Mr. Larue's claim for benefits. (Doc. No. 15 at 3.)  Thus, the Hospital is not a proper defendant to this action.  See Gluth v. Wal-Mart Stores, Inc., No. 96-1307, 1997 WL 368625, at *6 n.8 (4th Cir. July 3, 1997) (unpublished decision).

The Clerk is further directed to mail a copy of this Memorandum Opinion to all counsel of record.

It is **SO ORDERED** this 23rd day of September, 2008.

> ENTER:
>
> *David A. Faber* (signature)
>
> David A. Faber
> United States District Judge